**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 8, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2025AP2196
2025AP2198**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2025JV86
2025JV87**

**IN COURT OF APPEALS
DISTRICT II**

IN THE INTEREST OF D.R., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

D.R.,

    RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Fond du Lac County: DOUGLAS R. EDELSTEIN, Judge. *Affirmed*.

¶1    NEUBAUER, J.[1]  D.R., hereafter referred to as Drew,[2] appeals nonfinal orders waiving juvenile court jurisdiction.  Drew argues that the circuit court erred when it denied his motion to dismiss the State's waiver petition and when it determined the State proved, by clear and convincing evidence, that waiver was in the best interest of Drew or the public.  Because the court properly examined the relevant facts, applied a proper standard of law, and considered and balanced all the necessary factors, it was not an erroneous exercise of discretion to deny Drew's motion to dismiss and to waive juvenile court jurisdiction.  This court affirms.

¶2    On May 4, 2025, a Waupaca County sheriff's deputy responded to a civilian's complaint of a stolen vehicle.  Meanwhile, the New London Police Department, located in Waupaca County, requested assistance from the Waupaca County Sheriff's Department in pursuing a fleeing vehicle.  The New London Police Department had already initiated and then terminated two different pursuits of the fleeing vehicle.  It was later discovered that the fleeing vehicle was the reported stolen vehicle and that Drew and another juvenile were missing from Rawhide Youth Services, just over a mile away from where the owner of the stolen vehicle lived.

¶3    Later, at approximately 4:15 a.m. on May 5, 2025, officers from the Clintonville Police Department, located in Waupaca County, were dispatched for a report of a burglary to a closed gas station.  Officers discovered the entrance to the

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  To increase readability while preserving confidentiality, D.R. will be referred to using a pseudonym, Drew.  *See* WIS. STAT. § 809.19(1)(g).

gas station had been smashed open. Officers then reviewed surveillance video of the burglary, which revealed that the vehicle used in the burglary matched the description of the vehicle reported stolen by the New London Police Department. The video showed Drew trying to break the window on the station's door by hitting it with a rock several times, another juvenile attempting to throw a fire extinguisher through the door without success, and Drew driving the stolen vehicle into the glass doors of the station's entrance. The two juveniles proceeded to enter the gas station and steal several THC/CBD related vapes and products before fleeing in the stolen vehicle at a high rate of speed.

¶4      While investigating the burglary, the officers observed the suspect vehicle passing and attempted to conduct a traffic stop. The driver fled from officers by increasing his speed up to 90 miles per hour in a 55-mile-per-hour zone. As the pursuit continued, the driver traveled with the headlights off, in the wrong lane of traffic, weaving over multiple lanes and running a red light. To successfully stop the vehicle, a PIT maneuver[3] had to be utilized. Both Drew and the driver of the vehicle were taken into custody. Officers found several vape devices and THC/CBD related products on their persons. Drew appeared to be under the heavy influence of a substance. At the time of these incidents, Drew was 16 years old.

¶5      On June 30, 2025, the State filed two delinquency petitions in the Fond du Lac County Circuit Court. The first petition alleged burglary of a

---

[3] The Pursuit Intervention Technique, PIT, may be employed by officers against a pursued vehicle to terminate a pursuit or prevent a pursued vehicle from continued operation. *See* WISCONSIN STATE PATROL, POLICY AND PROCEDURES MANUAL: Pursuit Operations § 3-9 (July 11, 2017).

building or dwelling, contrary to WIS. STAT. § 943.10(1m)(a), and criminal damage to property, contrary to WIS. STAT. § 943.01(1). The second petition alleged operating a motor vehicle without the owner's consent, contrary to WIS. STAT. § 943.23(2).

¶6    On July 7, 2025, Fond du Lac County moved for a waiver of juvenile court jurisdiction in both cases. Fond du Lac County Department of Human Services ("DHS") then submitted a waiver report. This report was written by Drew's social worker, who also testified at Drew's waiver hearing (discussed below). DHS recommended that Drew be waived into adult court.

¶7    This recommendation was followed by a comprehensive 16-page report, which began by detailing a dangerously reckless incident that occurred on October 9, 2023. Drew was 14 years old at the time he stole his stepfather's work vehicle and engaged in a high-speed chase with law enforcement. Drew was referred to Youth Justice for charges stemming from this incident. Drew was ultimately adjudicated of second-degree recklessly endangering safety. Charges of operating a motor vehicle without owner's consent and attempting to flee or elude an officer with a modifier of use of a dangerous weapon were dismissed but read in. Due to Drew's continued need for supervision, the order originally set to expire on December 14, 2024, was extended until April 4, 2027, when Drew will be 18 years old.

¶8    The report also informed that after numerous attempts to address Drew's mental health and uncontrollable behaviors with hospital admissions, partial day program placements, inpatient program placements, secure detention placements, Drew remains out of control. Drew was initially placed with his parents, but they reported they were concerned about Drew's safety and that of

others due to his continued escalating behaviors including an incident in which he engaged in self-harm and threatened suicide. Based on this incident, he was placed voluntarily for suicidal ideation at Miramont Behavioral Health.

¶9      After three weeks of inpatient services at Miramont, where Drew continued to exhibit out-of-control behaviors, Drew was released and picked up by his mother on February 27, 2024. Drew continued to engage in aggressive behavior with his family, culminating in pushing and causing his brother to have a painful fall, then leaving the house and threatening suicide. At this point, a crisis social worker was contacted, and a 72-hour mental health hold was initiated.

¶10     After this mental health hold, Drew was transitioned into Bakari Residential Treatment Center on March 21, 2024, where he continued with aggressive, unsafe behavior including several physical incidents with others; posturing toward staff; failing to charge his GPS monitor for three weeks; and having daily incidents of leaving without permission. Bakari submitted a 30-day notice to have Drew transferred and a sanction request.

¶11     On May 29, 2024, Drew was ordered to 50 days in secure detention where he engaged in suicidal behavior. In July 2024, Drew was transferred to Lincoln Hills School for Boys, and after four weeks, Drew was administratively transitioned to Mendota Juvenile Treatment Center for more intensive services to meet his mental health needs.

¶12     While at Mendota, Drew seemed to make progress. Due to this progress, he was recommended for a less restrictive placement and transitioned to Rawhide Residential. At Rawhide, he began his unsafe and aggressive behaviors once again with physical incidents with others, refusing staff directives and behaving aggressively towards staff. He repeatedly left the line of sight and left

5

the classroom without permission. Drew was ultimately discharged from Rawhide, and on May 5, 2025, after being arrested for the current offenses, he was once again placed in secure detention.

¶13 On May 20, 2025, Drew was placed on suicide watch and was transferred back to Lincoln Hills. Drew's behavior continued to escalate during this stay, and on at least three occasions, he assaulted staff. He also engaged in a fight with another youth. Thereafter, Drew was administratively transferred for the second time to Mendota, where he continued to struggle behaviorally.

¶14 In addressing the adequacy and suitability of facilities and services in the juvenile justice system, the report emphasized that Drew "has taken part in intensive services that include several placements, yet, he continues to engage in increasingly risky behaviors that have a high probability of significant harm to self or others. At this point …, community safety cannot be maintained in any lesser restrictive settings and is of utmost concern." The report concluded "[t]here are no additional services left within the Juvenile Court system for [Drew] that have been adequate to prevent delinquent behavior, increase competencies, nor assure public safety. He remains in the most restrictive placement within the Juvenile Court system in the State of Wisconsin."[4]

¶15 On September 8, 2025, Drew filed a motion to dismiss the waiver petition. On September 15, 2025, a waiver hearing was held in Fond du Lac County Circuit Court. The court began by addressing Drew's motion to dismiss the State's waiver petition. Drew agreed with the State that the Fond du Lac

---

[4] DHS also stated that with the current Petition, Drew is not eligible for placement in the serious juvenile offender program under the criteria in WIS. STAT. § 938.34(4h).

County District Attorney's office had jurisdiction to bring Drew's juvenile petition because Drew resided in Fond du Lac County.[5] *See* WIS. STAT. § 938.185

¶16    However, despite agreeing that the Fond du Lac County District Attorney's office had jurisdiction to bring his juvenile petition before the Fond du Lac County Circuit Court, Drew challenged the court's authority to waive his case arguing that because WIS. STAT. § 938.18(6) directs the court to "refer[] the matter to the district attorney" if the case is waived, and because WIS. STAT. § 971.19(1) mandates that crimes be prosecuted "in the county where the crime was committed," which here is Waupaca County, the Fond du Lac County court could not grant waiver because it has no authority to waive a case to a district attorney other than the Fond du Lac County District Attorney.

¶17    The circuit court disagreed with Drew's interpretation of the relevant statutes, explaining that "[the] issue of venue on a potential criminal case" was premature.  The court further explained:

> It's a hypothetical for which arguments can be preserved by the parties, and the preservation of those arguments does not change the [c]ourt's analysis for today.  The analysis is that [waiver is] properly before the [c]ourt as cited by the venue sections.  I have authority to hear the waiver hearing.
>
> And the implication of what happens next is set for the next court on the next day in the next proceeding, not this [c]ourt for today.

---

[5] The venue statute for juvenile delinquency proceedings is broad, allowing for a proceeding to be held in the county where the juvenile resides, is present, or where the violation occurred.  *See* WIS. STAT. § 938.185.

In contrast, the venue statute for adult criminal actions mandates that the alleged crimes be prosecuted "in the county where the crime was committed."  *See* WIS. STAT. § 971.19(1).

The court denied Drew's motion to dismiss, noting "[v]enue for today's decision isn't … being argued. [Rather], [t]he [c]ourt is tasked with simply the determination as to whether or not waiver is proper." The court further explained that after "today's" determination, "[t]he court takes no further action other than potentially entering an order."

¶18 This court agrees with the circuit court that the determination as to waiver was properly before it, and the question of proper venue of a subsequent criminal proceeding was not before the court. Likewise, that issue is not before this court.[6]

¶19 The only issue at hand then is whether waiver was proper. We review a circuit court's decision to grant waiver under an erroneous exercise of discretion standard. *State v. Tyler T*., 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192. "An appellate court will affirm a discretionary decision if the circuit

---

[6] Drew's argument would effectively invalidate WIS. STAT. § 938.185's authorization for venue where the juvenile resides or is present in all waiver cases but those where these are one and same with the county where the violation occurred, an issue Drew does not effectively address. This court further notes that Drew fails to sufficiently develop his argument that a future criminal proceeding against him is *altogether* precluded because the Fond du Lac County District Attorney cannot bring criminal charges because Fond du Lac County is not an acceptable venue under WIS. STAT. § 971.19. While this court need not address this future issue, neither Drew nor the county addresses caselaw or statutory authority that appears to authorize the option of filing the criminal charges against Drew in Waupaca County. For example, WIS. STAT. § 978.05 includes, under "[d]uties of the district attorney," "**(7) Actions transferred to another county**. If the place of trial is changed in any action or proceeding under this section to another county within or outside his or her prosecutorial unit, [the district attorney shall] prosecute or defend the action or proceeding in that county." *See also Gibson v. State*, 47 Wis. 2d 810, 814-15, 177 N.W.2d 912 (1970) (Milwaukee County juvenile court can waive jurisdiction to Waukesha County criminal court). WISCONSIN STAT. § 938.18(9) also provides support for the State's argument that a juvenile waiver case may involve transfer to a court in another county: "If waiver is granted, sub. (1) does not restrict the authority of the district attorney to charge the offense he or she deems is appropriate and does not restrict the authority of *any* court or jury to convict the juvenile in regard to any offense." (Emphasis added.) Again, Drew fails to sufficiently address his bald contention that the referral precludes further prosecution.

court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Kleser*, 2010 WI 88, ¶37, 328 Wis. 2d 42, 786 N.W.2d 144. Importantly, we will not overturn a circuit court's discretionary determination if the record reflects that discretion was exercised; instead, we will seek out reasons to sustain the decision. *State v. Verhagen*, 198 Wis. 2d 177, 191, 542 N.W.2d 189 (Ct. App. 1995).

¶20    WISCONSIN STAT. § 938.18(5) lays out the criteria on which the circuit court must base its decision whether to waive jurisdiction:

> (a) The personality of the juvenile, including whether the juvenile has a mental illness or developmental disability, the juvenile's physical and mental maturity, and the juvenile's pattern of living, prior treatment history, and apparent potential for responding to future treatment.
>
> (am) The prior record of the juvenile, including whether the court has previously waived its jurisdiction over the juvenile, whether the juvenile has been previously convicted following a waiver of the court's jurisdiction or has been previously found delinquent, whether such conviction or delinquency involved the infliction of serious bodily injury, the juvenile's motives and attitudes, and the juvenile's prior offenses.
>
> (b) The type and seriousness of the offense, including whether it was against persons or property and the extent to which it was committed in a violent, aggressive, premeditated or willful manner.
>
> (c) The adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, where applicable, the mental health system and the suitability of the juvenile for placement in the serious juvenile offender program under [WIS. STAT. §] 938.538 or the adult intensive sanctions program under [WIS. STAT. §] 301.048.
>
> (d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated

9

in the offense with persons who will be charged with a crime in the court of criminal jurisdiction.

¶21    "The weight to be accorded each of the enumerated factors is discretionary with the [circuit] court." ***G.B.K. v. State***, 126 Wis. 2d 253, 259-60, 376 N.W.2d 385 (Ct. App. 1985) (citing ***State v. F.R.W.***, 61 Wis. 2d 193, 204, 212 N.W.2d 130 (1973)).  Further, "[i]t is not an abuse of discretion for a court to waive jurisdiction after giving heavy weight to the severity of the offense and the short period of time left in the juvenile system." ***G.B.K.***, 126 Wis. 2d at 260. After considering the enumerated criteria, "the court shall state its finding with respect to the criteria on the record, and, if the court determines on the record that there is clear and convincing evidence that it is contrary to the best interests of the juvenile or of the public to hear the case, the court shall enter an order waiving jurisdiction[.]" WIS. STAT. § 938.18(6).

¶22    Here, the record demonstrates that, after the circuit court found prosecutive merit, it conducted a thorough examination of the facts presented at the waiver hearing and the statutory criteria before making its determination to waive Drew into adult court.

¶23    The circuit court considered each of the first three factors: Drew's mental health and treatment history; his prior record; the type and seriousness of the offense; and the adequacy and suitability of services and programs the juvenile system offers for the treatment of Drew. *See* WIS. STAT. § 938.18(5)(a)-(c).

¶24    Regarding Drew's mental health and treatment needs, the evidence presented at the waiver hearing included the waiver report and testimony by the county social worker and Drew's mother.  The social worker testified that Drew started under DHS supervision in 2023.

10

¶25    Drew has struggled with suicidal ideation, repeatedly attempted suicide and engaged in acts of self-harm.  He has been diagnosed with multiple mental illnesses.  He does not function at grade level, and he has struggled academically and developmentally.

¶26    The circuit court recognized that Drew's "unique mental health history" presents meaningful concerns.  The court noted that it "ha[s] to give consideration as to what can be done to protect [Drew] within the scope of juvenile oversight."  In particular, the court found Drew presents:

> his own individual difficulties, be it in the form of mental illness or developmental disability.  There's certainly some limitations.  He has a variety of diagnoses which range in nature to perhaps opposition defiance, forms of bipolar, aspects of consideration of PTSD, anxiety.  Those are all unique characteristics for which he presents.  He has a history of mental illness, also of suicidal ideation that has resulted in several inpatient psych evaluations.
>
> So as I look at his personality, and taking the testimony of his mother that perhaps he's operating, although aged at a grade-level of a juvenile, it's more consistent with that of a fourth or sixth grader for different aspects.  He simply doesn't function at the grade-level.

¶27    The circuit court then outlined Drew's extensive history of suicidal threats and attempts.  The court opined that "mental health is a crucial cornerstone of services that need to be offered here," and that Drew "is capable of being rehabilitated …. Capable of being given structure, given programming."

¶28    In terms of Drew's treatment needs and the adequacy of services, there was evidence that Drew responded positively to programming at times in terms of his mental health and academic and behavioral progress.  Drew also had a history of dysregulation and absconding.

11

¶29    Drew's social worker confirmed the details in the waiver report.   In 2024, after an adjudication for second-degree recklessly endangering safety related to the high-speed chase he engaged in at age 14, Drew was placed at the Bakari Center after he pushed his brother and was put on a mental health hold.   He was discharged from Bakari after he was involved in numerous incidents, including leaving without permission.   Drew was then placed on GPS but was subsequently ordered to serve 50 days in secure detention for violating the rules of his GPS monitor.   After a year at Lincoln Hills, Drew was moved to Mendota and ultimately to Rawhide—where he absconded to commit the alleged offenses at issue here.

¶30    Drew's social worker agreed that Drew does best when he receives intensive mental health treatment and that Mendota could meet those needs.   However, when she was asked if Drew had positively responded to attempts at treatment, she stated, "at times.   Overall, though it was not enough to prevent the criminal activity."   The social worker stated that she didn't believe that Drew was likely to respond to further treatment in the juvenile system, given that even the most restrictive option available was not enough to keep Drew from committing further crimes.   She noted that Drew had a history of running away from his residential treatment programs, running away from Bakari and from Rawhide.   The social worker stated that Fond du Lac County did not have services other than those already provided.

¶31    In light of this history, regarding Drew's treatment needs and the juvenile services offered, the court pointed out that Drew's "performance on [juvenile] supervision is poor[,]" and though Drew has been offered a variety of services at different facilities, Drew had a history of running away.

12

¶32     The circuit court further noted that Drew has never been waived and that he has one prior adjudication for second-degree recklessly endangering safety, related to a high-speed chase.  The court explained:

> I give consideration as to is that a product of his motives, is that a product of his attitudes, is that a produc[t] of mental health?  I think it's probably a little bit of everything, none of which can be readily distinguished.  We have a young man with limitations.  He's been offered a variety of services at different facilities.  There has been a history of runaway.  There's been a history of continuation of like behavior.
>
> And so even though these offenses involve … property-type offenses, they are aggravated in scope given what I would consider to be the immense disregard to rights of property of others.  Not only of a vehicle, which is an expensive item, a dangerous item, but a physical building for which something as silly as breaking in to take vape cartridges would warrant that level of destruction.

¶33     The court ultimately concluded that, despite Drew's significant need for mental health services, Drew's behavior in the juvenile system remained uncontrollable, such that rehabilitation during the time that Drew would be in the juvenile system was unlikely to be successful and could result in more episodes of running away and engaging in violent/aggressive behavior.  *See* **G.B.K.**, 126 Wis. 2d at 260 ("It is not an abuse of discretion for a court to waive jurisdiction after giving heavy weight to the severity of the offense and the short period of time left in the juvenile system.")  (Citation omitted).  The court explained:

> The factors under criteria for waiver, they really are balanced quite evenly on this case.  I balance quite evenly his mental health and the limitations of prior adjudications.  What ultimately tips in favor of waiver in these cases are that there's been continuation of, what I consider to be, violent aggressive-type behaviors—although not crimes against persons, crimes against property—which is a product of run-away behavior.  It's uncontrollable.  It's behavior for which any parameters put in place for the benefit of rehabilitation, treatment, and protection of

13

[Drew] are met with indifference and continuation of like behavior.

The court emphasized, "when I give consideration of the adequacy and suitability of those facilities and services, given [Drew's] history I don't think it would be adequate because it would be likely he'[d] be prone to abscond again and perhaps commit further crimes."

¶34    The circuit court further indicated that the State had met its burden to show by clear and convincing evidence that it was contrary to the public's interest for the matter to remain in juvenile jurisdiction: "I don't think it would be in the public's interest for this to stay [in] juvenile [jurisdiction] because I think [Drew], given his age, is on the threshold of adulthood such that if there's going to be any opportunity for continued intervention, he should get those services now." It further opined:

> If we keep him in the juvenile system and nothing happens, the argument becomes he should have gotten the services in the juvenile system but now he's an adult. … [Drew's] behavior has persisted significantly enough such that I think the public would maintain their interest in this matter proceeding to adult jurisdiction.
>
> ….
>
> … You don't take things that don't belong to you, and you don't seek to damage property of others. … [P]erhaps the juvenile system has been insufficient for [Drew] to understand that when you break rules, there are consequences.
>
> But I think it merits a consideration that his needs and his unique circumstances at this time have an elevated concern for the need to protect the public, not just today but tomorrow. And [Drew] can certainly advance, develop, and become a successful adult. But without some intervention now, my concern is that he wouldn't get services that he may need and—although parallel services.

14

¶35     In its conclusion, the court explained: "The first thing I think is necessary [is] that [Drew] not abscond, and his ease of absconding in the juvenile system is such that I don't find those services appropriate given his needs." The court then granted waiver.

¶36     Drew contends that the circuit court's decision is not in his best interests. The statute, however, permits waiver when the court determines that it would be contrary to the public's interest for the matter to remain in juvenile jurisdiction. The court considered and addressed this issue, and disagreed with Drew's position that the public will be best served by continued intensive mental health services provided under the remaining time frame for juvenile jurisdiction. The court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. The record satisfies this court that the circuit court thoroughly considered and explained its rationale for each factor, including the best interests of the public. The circuit court's determination to waive juvenile jurisdiction was not an erroneous exercise of discretion. This court affirms.

        *By the Court.*—Orders affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.